UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**          (IN CHAMBERS) - DEFENDANT ASPIRANET'S MOTION TO
DISMISS (Dkt. 28, filed May 22, 2017)

DEFENDANT ASPIRANET'S MOTION TO STRIKE (Dkt. 29,
filed May 22, 2017)

DEFENDANTS COUNTY OF LOS ANGELES, RENEE
MARSHALL, RABIA MIRZA, AND EDMUND PAIK'S MOTION
TO DISMISS (Dkt. 35, filed May 22, 2017)

## I.    INTRODUCTION

On November 3, 2016, plaintiffs D.B. and S.B. (through their guardian ad litem
Kelly Clarke) filed this action in Los Angeles County Superior Court against defendants
Ingrid Brewer, the County of Los Angeles ("the County"), Rabia Mirza, Patricia
McQueen, Renee Marshall, Edmund Paik, Aspiranet, and Does 1–20, inclusive.  Dkt. 1-1.

On March 1, 2017, the case was removed to federal court.  Dkt. 1.  On April 21,
2017, plaintiffs filed their first amended complaint against the same defendants.  Dkt. 17
("FAC").  Plaintiffs assert six claims: (1) public employee liability, against all defendants
except Brewer and Aspiranet; (2) violation of mandatory statutory duties, against all
defendants except Brewer and Aspiranet; (3) breach of duty of care owed to plaintiffs by
reason of a special relationship; (4) violation of plaintiffs' civil rights, pursuant to 42
U.S.C. § 1983, against all defendants except Brewer; (5) general negligence against
Aspiranet, Brewer, and Does 1–20; and (6) intentional misconduct, against Brewer and
Does 1–20.  Id.  The gravamen of plaintiffs' complaint is that Brewer—who served as

plaintiffs' foster mother and adoptive mother—criminally tortured plaintiffs between 2009 and 2013 and defendants are civilly liable for the harm that plaintiffs suffered.

On May 22, 2017, Aspiranet filed a motion to dismiss the FAC, dkt. 28 ("AMTD"), and a motion to strike portions of the FAC, dkt. 31 ("MTS"). On May 29, 2017, plaintiffs filed an opposition to Aspiranet's motion to dismiss, dkt. 37 ("Opp'n to AMTD"), and an opposition to Aspiranet's motion to strike, dkt. 36 ("Opp'n to MTS"). On June 5, 2017, Aspiranet filed replies in support of its motions. Dkts. 45 ("Aspiranet Reply"), 46.

Also on May 22, 2017, the County, Marshall, Mirza, and Paik (collectively, "the County defendants") filed a motion to dismiss plaintiffs' FAC.[1] Dkt. 35 ("County MTD"). On May 29, 2017, plaintiffs filed an opposition to the County defendants' motion to dismiss. Dkt. 38 ("Opp'n to County MTD"). On June 5, 2017, the County defendants filed a reply in support of their motion. Dkt. 47 ("County Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND

Plaintiff alleges the following facts.

D.B., a boy, was born on March 4, 2004 and S.B., a girl, was born on March 7, 2005. FAC ¶¶ 11–12. On or about August 30, 2007, plaintiffs were declared dependents of the juvenile court and placed in the home of their presumed biological father. Id. ¶ 77. Between March 7, 2008 and May 1, 2009, plaintiffs lived in a foster home and then with their paternal aunt and uncle. Id. ¶ 78.

On September 28, 2009, plaintiffs were placed in the foster home of Brewer. Id. ¶ 80. Aspiranet, a private Foster Family Agency ("FFA"), had certified Brewer as a foster parent and Brewer's home as a foster home for the placement of plaintiffs, who were then in the custody of the County's Department of Children and Family Services ("DCFS"). Id. ¶¶ 7, 46, 80. However, on information and belief, plaintiffs allege that the DCFS and Aspiranet did not undertake mandatory pre-placement efforts regarding:

---

[1] McQueen, who has not yet been served, is not included among the County defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|-------------------------|------|---------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

Brewer's ability to meet plaintiffs' special needs; whether Brewer had the temperament, skills, and training to care properly for plaintiffs; or whether plaintiffs would accept Brewer as a foster parent or adoptive parent. Id. ¶ 81. For example, between February 2001 and April 2009, there were six different occasions in which third parties or Brewer's other foster children reported physical or emotional abuse to children. Id. ¶¶ 71–76. Neither the County nor Aspiranet took action against Brewer in response to these reports. Id.

Brewer told the County "from the beginning" that she wanted to adopt plaintiffs. Id. ¶ 88. On January 8, 2010, an adoption home study was approved. Id. ¶ 90.

On January 28, 2010, Mirza—who was employed by the County as a Children's Social Worker—reported that, in school, D.B. had difficulty focusing, regularly put things in his mouth (including paste, cotton balls, and scissors), and could not work independently. Id. ¶¶ 14, 91.[2] According to plaintiffs, such behavior is consistent with starvation. Id. ¶ 91. In addition, defendants knew that plaintiffs did not call Brewer "mommy." Id. ¶ 89.

Also on January 28, 2010, Marshall—employed by the County as a Children's Social Worker—reported "to the Court that plaintiffs continued in the Aspiranet / Brewer certified foster home as plaintiffs' prospective adoptive mother."[3] Id. ¶¶ 15, 92. On the same day, the juvenile dependency court presiding over plaintiffs' dependency case calendared a hearing to terminate plaintiffs' biological parents' rights. Id. ¶ 92.

In May and August 2010, DCFS held Team Decision Meetings with Brewer; such meetings are used to address concerns about a dependent child or foster parent. Id. ¶¶ 97, 101. During the May 2010 meeting, Brewer stated that she was frustrated that referrals could be made to the Child Protection Hotline ("CPH")—which is operated by DCFS—and stated that she might not want to adopt plaintiffs if additional reports were made against her. Id. ¶¶ 58, 97. On July 12, 2010, Brewer told defendants that S.B. had been stealing and hiding items from her and asked DCFS to find another placement for S.B. Id. ¶ 100. During the August 2010 meeting, Brewer denied that she had threatened to end S.B.'s placement. Id. ¶ 101. At the same meeting, the team found Brewer's style of disciplining S.B. was not appropriate and was excessive for S.B.'s age. Id. Brewer also

---

[2] Plaintiffs do not allege to whom such information was reported.

[3] It appears that plaintiffs are referring to the juvenile dependency court.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

requested additional services to address plaintiffs' behavioral issues and expressed frustration that D.B. had been denied a higher reimbursement rate. Id.

A number of individuals reported information suggesting cause for concern regarding Brewer's prospective adoption of plaintiffs. On March 8, 2010, a third party reported to the CPH that Brewer was physically abusing a three-year old foster child in her care and that the child had stated that Brewer hit him with a belt resulting in a bruise on his bottom. Id. ¶ 93. In March 2010, the County reported that Brewer and plaintiffs were not bonding. Id. ¶ 94. In May 2010, another third party "called in a referral against Brewer" alleging that S.B. appeared to be afraid to go home with Brewer after preschool and that she asked for second helpings of snacks, saying she was hungry. Id. ¶ 95. On July 13, 2010, a third individual called the CPH to report that Brewer was physically and emotionally abusive to plaintiffs, that D.B. told the reporting party that Brewer hit him and that he had a bruise on his bottom. Id. ¶ 98. The reporting party saw the bruise. Id. In addition, S.B. stated that she did not want to go home to Brewer and wanted to live elsewhere. Id. When Mirza and McQueen visited Brewer on July 14, 2010, S.B. appeared sad and anxious and was preoccupied with the idea of "prison" and staying in her room as if it were a prison. Id. ¶ 99. S.B. told the social workers that she "want[ed] to live somewhere else." Id. In December 2010, a social worker reported that the Brewer family was not functioning at the expected level. Id. ¶ 102. According to a February 24, 2011 DCFS report, one social worker reported that D.B. was (a) assigned a special education attorney, (b) continued to struggle with behavior and academics, (c) had less anxiety; (d) did not appear to be stealing; and (e) had been approved for a higher reimbursement rate. Id. ¶ 104. The social worker reported that S.B. continued to express fear of Brewer and that S.B.'s goals in counseling were to (a) adjust to Brewer (whom plaintiffs continued to call "Ms. B"); (b) deal with the loss of her mother; and (c) be less withdrawn. Id. On April 13, 2013, another individual reported to CPH that Brewer was using inappropriate discipline and physical abuse against her foster children. Id. ¶ 105.

On or about July 28, 2011, Brewer formally adopted plaintiffs. Id. ¶ 106.

The County permitted Brewer to homeschool plaintiffs. Id. ¶ 107. According to plaintiffs, this enabled Brewer to limit the visibility of her interaction with plaintiffs. Id.

Shortly before midnight on January 15, 2013, law enforcement officers found plaintiffs hiding between two parked cars a quarter-mile from Brewer's house. Id. ¶¶ 1, 111. Plaintiffs reported to law enforcement, and later to medical providers, that they had

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|-------------------------|------|---------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

been subject to severe abuse, including having their hands tied around their backs; being locked in a room all day without sufficient food; being beaten with objects and Brewer's hands; and being subject to threats at knifepoint. Id. ¶ 2. Detectives observed scars, abrasions, bruises, and ligature marks on both of D.B.'s wrists. Id. ¶ 3. S.B. was improperly nourished and had multiple scars, bruising, pattern marks on both wrists, and swollen hands. Id. ¶ 4. D.B. reported that he had not attended school in several weeks. Id. ¶ 113

On March 17, 2015, the Los Angeles County Superior Court sentenced Brewer to life imprisonment without the possibility of parole for two counts of torture. Dkt. 29-2.

## III.  LEGAL STANDARDS

### A.  Motion to Strike

A motion to strike material from a pleading is made pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks omitted), rev'd on other grounds, 510 U.S. 517 (1994). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id.

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, 984 F.2d at 1527. A motion to strike is a matter of the district court's discretion. Griffin v. Gomez, No. 98-cv-21038-JW-NJV, 2010 WL 4704448, at *4 (N.D. Cal. Nov. 12, 2010). A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). Indeed, "[m]otions to strike are generally not granted unless it is clear that matter to be stricken could have no possible bearing on the subject matter of litigation." Lazar v. Trans Union LLC, 195 F.R.D. 665, 669 (C.D. Cal. 2000) (quotation marks omitted). Furthermore, motions to strike "are disfavored in the absence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|-------------------------|------|---------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

prejudice[.]" Multimedia Patent Trust v. DirecTV, Inc., No. 09-cv-278-H-CAB, 2011 WL 13100718, at *1 (S.D. Cal. Feb. 24, 2011). In determining a motion to strike, the court must view the pleadings in the light most favorable to the non-moving party. See Wailua Assocs. v. Aetna Cas. & Sur. Co., 183 F.R.D. 550, 554 (D. Haw. 1998).

### B. Motion to Dismiss

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a pleading. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). A counterclaim generally must satisfy the minimal notice pleading requirements that apply to a complaint under a Rule 12(b)(6) motion. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The pleading must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|--------------------------|------|----------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the pleading (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Fed. Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

As a general rule, leave to amend a pleading which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    DISCUSSION

### A.    Aspiranet's Motion to Strike

First, Aspiranet requests that the Court strike eleven paragraphs from the FAC because they include (and repeat) inflammatory, scandalous, immaterial, and "overly dramatic" allegations – namely, the "horrific state in which plaintiffs were found after

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

being tortured" by Brewer. MTS at 2–3. While the allegations regarding plaintiffs' suffering are alarming, the extent and apparent nature of their injuries could be relevant to the jury's consideration of damages. Because it is not clear that such allegations have "no possible bearing" on the subject matter of the litigation, the Court declines to strike these paragraphs. See Lazar, 195 F.R.D. at 669 (quotation marks omitted).

Second, Aspiranet requests that the Court strike allegations and citations regarding "mandatory duty" because they are based on "non-existent" statutes. Id. at 4. Third, Aspiranet requests that the Court strike allegations in two paragraphs that refer to immaterial statutes. Id. at 5. The Court finds that these requests go to the merits of plaintiffs' claims and are more properly considered in the context of a motion to dismiss.

Finally, Aspiranet requests that the Court strike a sentence from paragraph 100 of the FAC because is nonsensical. Id. at 6. The sentence reads: "Again they Co. and the spirit and it did nothing." FAC ¶ 100. Plaintiffs concede that this sentence contains typographical errors and was intended to say, "Again, LACO and Aspiranet did nothing." Opp'n to MTS at 4. Because Aspiranet has not, and cannot, identify any prejudice arising from these errors, the Court declines to strike this sentence. See Multimedia Patent Trust, 2011 WL 13100718, at *1. Furthermore, as stated below, the Court grants plaintiffs leave to amend the operative complaint and plaintiffs may amend this sentence to correct the error.

In sum, the Court **DENIES** Aspiranet's motion to strike.

### B.     Aspiranet's Motion to Dismiss

#### 1.     Section 1983

Aspiranet argues that plaintiffs' Section 1983 claim fails for three reasons: (1) plaintiffs fail to allege that Aspiranet engaged in any unconstitutional conduct; (2) Aspiranet is a private actor and did not act as a state actor; and (3) plaintiffs did not properly allege Monell liability. AMTD at 14–23. The Court addresses these arguments in turn.

##### a.     Whether Plaintiffs Allege Unconstitutional Conduct

Section 1983 provides for a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the U.S. Constitution or

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

the laws of the United States. "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Therefore, "[t]he first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983).

Plaintiffs allege that defendants' conduct deprived plaintiffs "of their rights, privileges, and immunities as secured to them by the Constitution of the United States, including plaintiffs' right to safety and freedom from harm, and the right not to be deprived of state or federally created liberty or property rights as guarantees by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution." FAC ¶ 147. Plaintiffs do not plead any facts to suggest that defendants violated their First or Fourth Amendment rights. While plaintiffs' experience in Brewer's home was certainly "cruel and unusual," the Eighth Amendment does not apply to plaintiffs' experience with their foster and adoptive parent. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); Whitley v. Albers, 475 U.S. 312, 318 (1986) (same).

In their opposition to Aspirant's motion, plaintiffs appear to clarify that their Section 1983 claim arises only under the Fourteenth Amendment's Due Process Clause, which "protects a foster child's liberty interest in social worker supervision and protection form harm inflicted by a foster parent." Opp'n to AMTD at 12.

"The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010). "A state official's duty to provide adequate care to a foster child generally terminates once the foster child is officially adopted." Id. at 843. "However, state actors may nevertheless incur liability under § 1983 if state officials affirmatively created a danger that the adopted child would not have otherwise faced." Id. The Ninth Circuit found that facts giving rise to the Section 1983 claim in Tamas were distinct from the circumstances considered by the Supreme Court in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989) because [i]n DeShaney, the state briefly took custody of a child from his birth father to investigate alleged abuse." Tamas,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|--------------------------|------|---------------|
| Title    | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

630 F.3d at 844. By contrast, in <u>Tamas</u>, "Monica, as a foster child was in the custody of the state for three years prior to adoption." <u>Id.</u> Despite reports of the foster parents' abuse of Monica, defendants approved the parents' foster-care licenses and "pav[ed] the way for [the foster parent] to continue abusing Monica after her adoption." <u>Id.</u> at 843. Therefore, "[u]nlike the facts in <u>DeShaney</u>, where the victim was 'in no worse a position than that in which he would have been had [the state] not acted at all,' Monica was placed in a worse situation by the actions and inactions of the various [defendants]." <u>Id.</u> at 844 (quoting <u>DeShaney</u>, 489 U.S. at 201). The facts in <u>Tamas</u> are analogous to those presented here. The Court thus concludes that plaintiffs' Section 1983 claim pursuant to the Fourteenth Amendment states a cognizable legal theory.

To support such a claim, plaintiffs much plead that "state officials act[ed] with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" <u>Tamas</u>, 630 F.3d at 844 (quoting <u>Brittain v. Hansen</u>, 451 F.3d 982, 991 (9th Cir. 2006)). Conduct that "shocks the conscience" is "deliberate indifference to a known or so obvious as to imply knowledge of, danger." <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1064 (9th Cir. 2006) quotation marks omitted). In <u>Tamas</u>, the Ninth Circuit held that

> the deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference. The subjective component may be inferred from the fact that the risk of harm is obvious.

630 F.3d at 845 (citations and quotation marks omitted); <u>see</u> <u>Henry A. v. Willden</u>, 678 F.3d 991, 1001 (9th Cir. 2012) (same). "[A] foster child's due process rights are violated when a state official exhibits deliberate indifference to a child's serious medical needs; to suspected physical abuse in a foster home; and to suspected sexual abuse in a foster home." <u>Henry A.</u>, 678 F.3d at 1001 (citations omitted). Viewing the complaint in a light most favorable to plaintiffs, the Court finds that plaintiffs adequately plead facts that, if true, would establish that state officials acted with deliberate indifference to the suspected physical abuse in plaintiffs' foster, and then adoptive, home. For example, plaintiffs allege that before plaintiffs' foster placement with Brewer on September 28, 2009, there were six different occasions between February 2001 and April 2009 in which third parties

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|-------------------------|------|---------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

or Brewer's other foster children reported physical or emotional abuse to children.  FAC ¶¶ 71–76.  Furthermore, prior to Brewer's adoption of plaintiffs, numerous reporting parties and plaintiffs reported Brewer's abuse to government actors.  Id. ¶¶ 58, 93–95, 98, 99, 102, 104, 105.  The Court concludes that these reports demonstrate that officers were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm to plaintiffs and that a reasonable official would have been compelled to draw that inference.  The Court therefore concludes that plaintiffs adequately plead that they were deprived of a right "secured by the Constitution and laws."

   **b.    Whether Aspiranet is a State Actor**

   The Court next considers whether Aspiranet may be subject to liability under Section 1983.  "Section 1983 liability extends to a private party where the private party engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States." Brunette v. Humane Soc'y of Ventura Cty., 294 F.3d 1205, 1209 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Aug. 23, 2002).  The Ninth Circuit recognizes four tests to determine whether a private actor was acting as a state actor for purposes of Section 1983: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus."  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quotation marks omitted).  "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists."  Id.  Plaintiffs allege that Aspiranet acted as a state actor under the public function and joint action theories.  See FAC ¶ 142.

   "Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'"  Lee v. Katz, 276 F.3d 550, 555 (9th Cir. 2002) (quoting Evans v. Newton, 382 U.S. 296, 299 (1966)).  "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental."  Kirtley, 326 F.3d at 1093 (quotation marks omitted).

   Aspiranet is a private foster family agency ("Private FFA").  FAC ¶ 7.  A Private FFA is "a foster family agency organized and operated as a nonprofit corporation and not part of any governmental entity."  22 Cal. Code Regs. § 88001(p)(2).  An FFA is "any organization engaged in the recruiting, certifying, and training of, and providing

professional support to, certified parent(s), or in finding homes for placement of children for temporary or permanent care who require that level of care as an alternative to a group home. Private foster family agencies shall be organized and operated on a nonprofit basis." Id. § 88001(f)(2). FFAs, whether public or private, are engaged in:

> (A) Recruiting, certifying, approving, and training of, and providing professional support to, foster parents and resource families[;]
>
> (B) Coordinating with county placing agencies to find homes for foster children in need of care[; and]
>
> (C) Providing services and supports to licensed or certified foster parents, county-approved resource families, and children to the extent authorized by state and federal law.

Cal. Health & Safety Code § 1502(a)(4). An FFA may use only a certified home for foster placement. Id. § 1506(a)(1).

Federal courts disagree as to whether private foster agencies that place children in foster homes conduct a public function. See Dahn v. Adoption All., 164 F. Supp. 3d 1294, 1303 (D. Colo. 2016) (collecting cases). For example, in Martinez v. Cty. of Kern, No. 06-cv-1827-LJO-TAG, 2007 WL 1079937 (E.D. Cal. Apr. 9, 2007), a California district court concluded that a Private FFA is not a state actor under the public function test. In Martinez, plaintiffs were parents of a child who died while in foster care after he had been involuntarily removed from plaintiffs and adjudicated a dependent of the Kern County Juvenile Court. Id. at *1. The Martinez plaintiffs raised a Section 1983 claim against MBH, "a private, non-profit, public benefit corporation and is a California licensed foster family agency which locates foster homes for court dependent children." Id. The Martinez court concluded that MBH's role and function was "that of a private non-profit organization, not the state" because MBH did not remove the child from his parents' home conduct that is "traditionally and exclusively a governmental function"; rather, MBH's statutory powers were "limited to child placement, not child removal." Id. at *6. By contrast, a district court in Pennsylvania concluded that foster care agencies perform a public function because such agencies *can* remove children from their homes in Pennsylvania. Harris ex rel. Litz v. Lehigh Cty. Office of Children & Youth Servs., 418 F. Supp. 2d 643, 651 (E.D. Pa. 2005). Furthermore, the law in the Second Circuit "is that private foster care agencies . . . are state actors." S.W. ex rel. Marquis-Abrams v.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. |

City of N.Y., 46 F. Supp. 3d 176, 196 (E.D.N.Y. 2014). A Florida district court concluded that a foster placement agency is a state actor under the public function test because "placement services, traditionally exclusively performed by the State, [are] distinguishable from foster parenting services, not traditionally exclusively performed by the State." Smith v. Beasley, 775 F. Supp. 2d 1344, 1354 (M.D. Fla. 2011). Other courts have declined to resolve the question. See Hall v. Smith, 497 F. App'x 366, 375 n.13 (5th Cir. 2012) ("[W]e do not opine on whether, if applying the public function test, a private child placement agency could be considered a state actor with respect to the foster child placement decisions it makes pursuant to a contractual relationship with a state.").

Given the uncertain state of the law on this question, "the fact-intensive nature of the inquiry," Lee, 276 F.3d at 554, and the Court's conclusion below that plaintiffs fail to adequately allege Monell liability against Aspiranet, the Court declines, at this stage, to determine whether Aspiranet is a state actor under the public function test. See also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295–96 (2001) (whether private conduct may be treated as that of the state "is a matter of normative judgment, and the criteria lack rigid simplicity").

"Under the joint action test, we consider whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." Kirtley, 326 F.3d at 1093. In other words, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002) (quotation marks omitted). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." Id. (quotation marks omitted). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." Id.

Plaintiffs argue that Aspiranet is a joint actor with the County because plaintiffs are "not at fault for the parade of horribles they experienced" and because Aspiranet "performs under the direction and control of the DCFS." Opp'n to AMTD at 15. Plaintiffs' first assertion, while true, has no bearing on whether Aspiranet is a joint actor. Plaintiff has not alleged any facts suggesting that Aspiranet was subject to DCFS's control. Furthermore, plaintiffs do not allege any facts that would support a finding that: (a) Aspiranet acted jointly with the County in such a way that generated benefits for the

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

County; or (b) Aspiranet and the County had a common goal of violating plaintiffs' constitutional rights. Keeping in mind that Ninth Circuit has "been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights[,]" id., the Court concludes that Aspiranet may *not* be treated as a state actor pursuant to the joint action test.

### c.    Monell Liability against a Private Actor

To assert a Section 1983 claim against Aspiranet, plaintiffs must satisfy Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). Traditionally, Monell permits *municipal* liability pursuant to Section 1983 if a plaintiff demonstrates that "a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity." Avalos v. Baca, 596 F.3d 583, 587–88 (9th Cir. 2010). In Tsao v. Desert Palace, Inc., 698 F.3d 1128, the Ninth Circuit joined its sister circuits in concluding that that the requirements of Monell apply to suits against private entities under Section 1983. Id. at 1138–39. Thus, "[t]o support a § 1983 claim against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity." Larsgard v. Corizon Health, Inc., No. 13-cv-01747-PHX-SPL, 2014 WL 5340581, at *6 (D. Ariz. Oct. 21, 2014) (citing Tsao, 698 F.3d at 1138–39); see also Childs Ii v. Wynn Las Vegas, LLC, No. 2:15-cv-1342-JCM-GWF, 2016 WL 7441067, at *2 (D. Nev. Dec. 27, 2016) ("[T]he defendant in this case is a business, not any individual person. In light of Ninth Circuit precedent, plaintiff's claims are properly analyzed within the framework provided by Monell[.]").

Aspiranet argues that plaintiffs fail to make out a Monell claim against it because plaintiffs do not allege that Aspiranet had an unlawful policy or practice amounting to deliberate indifference to plaintiffs' constitutional rights that was a moving force behind the alleged constitutional violations. AMTD at 15. "To make out a claim against [a private entity] under Monell, [plaintiffs] must show that (1) [the entity] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the private entity]." See Tsao, 698 F.3d at 1139. A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Long v. Cty. of Los Angeles, 442 F.3d 1178,

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

1185 (9th Cir. 2006) (quotation marks omitted). "A policy can be one of action or inaction." Id. A policy of action "result[s] in the municipality itself violating someone's constitutional rights or instructing its employees to do so[.]" Tsao, 698 F.3d at 1143. A policy of inaction "result[s], through omission, in municipal responsibility for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." Id. (quotation marks omitted). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty v. Brown, 520 U.S. 397, 404 (1997).

Even reading the FAC in the light most favorable to plaintiffs, the Court cannot conclude that plaintiffs allege that their injuries arose from an official policy or widespread custom adopted by Aspiranet. To the extent that plaintiffs allege their injuries arose from *any* policy or custom, they attribute those policies and customs to the County. See FAC ¶¶ 145–46. Accordingly, the Court **DISMISSES** without prejudice plaintiffs' Section 1983 claim against Aspiranet.

### 2. Whether Plaintiffs Have Stated a Claim for a Breach of Duty Arising from a Special Relationship

According to plaintiffs' third claim, defendants had a "special relationship" with plaintiffs that imposed an independent affirmative duty of care and defendants negligently discharged this affirmative duty of care. FAC ¶¶ 136–38. Plaintiffs assert this claim *in addition to* plaintiffs' fifth claim for general negligence against Aspiranet, Brewer, and the Doe defendants. See FAC ¶¶ 149–57. Aspiranet argues that the existence of a special relationship is not a predicate for a separate claim; rather, a special relationship is the basis for establishing the "duty" element of a negligence claim. AMTD at 23. In their opposition, plaintiffs reiterate that Aspiranet had a special relationship with plaintiffs, but do not explain how that relationship serves as the basis for something other than a negligence claim. See Opp'n to AMTD at 16–17. Plaintiffs cite no authority supporting the existence of a separate claim for "breach of duty owing by special relationship."

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|--------------------------|------|----------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

The Court finds Aspiranet's argument persuasive. The existence of a special relationship does not create a separate claim for liability, but instead establishes the requisite duty underlying a negligence claim where the plaintiff alleges that the defendant failed to fulfil its affirmative obligations. *See* Justice Zerne P. Haning et al., California Practice Guide: Personal Injury § 2:1895 (The Rutter Group 2016) ("Generally, one who has not created a peril has no duty to affirmatively act so as to prevent harm to third persons. . . . The law does impose a legal duty to *affirmatively act* (to protect someone else from danger or to control the conduct of a third person) if there is a 'special relationship' between defendant and the person in danger or the third person creating the danger."); Rebecca A. Wiseman & Sara Church Reese, California Practice Guide: Civil Procedure Before Trial Claims and Defenses §§ 6:106–10 (The Rutter Group 2016) (describing a "special relationship" as the basis for an affirmative duty to act, where duty of care is a necessary element of a negligence claim); see also Chavira v. El Rancho Unified Sch. Dist., No. 2:15-cv-07147-CAS-AS, 2015 WL 6957990, at *6 (C.D. Cal. Nov. 9, 2015) (dismissing a claim—raised by the same counsel before this Court—for "breach of duty owing by special relationship" on the same ground). Accordingly, the Court **DISMISSES** without prejudice plaintiffs' third claim for relief as against all defendants.

### 3.    Whether Aspiranet is a "Public Entity" Subject to "Mandatory Duties"

Aspiranet argues that plaintiffs should not refer, in paragraph 47 of the FAC, to Aspiranet as a "public entity," pursuant to California Government Code § 811.2. AMTD at 23. In paragraph 47, plaintiffs allege that the responsibilities of a licensed FFA include providing professional support to its certified foster parents, pursuant to Government Code § 811.2, among other provisions. FAC ¶ 47. Aspiranet further argues that plaintiffs' collective reference to "defendants" improperly suggests that the Aspiranet has "mandatory duties" pursuant to California's Welfare and Institutions Code and the California Department of Social Services Division 31 Manual of Policies and Procedures. AMTD at 24.

California Government Code § 811.2 provides that a "'[p]ublic entity' includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." It is undisputed that Aspiranet is not a "public entity" under Section 811.2. California

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | | |

Government Code § 815.6 imposes liability on "a public entity . . . under a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury." Because Aspiranet is not a "public entity," it is not subject to mandatory duties pursuant to Section 815.6.

It does not appear, however, that plaintiffs' claims against Aspiranet rely on the allegation that Aspiranet is a "public entity" within the meaning of Section 811.2 or that Aspiranet is subject to "mandatory duties" pursuant to Section 815.6. Namely, plaintiffs expressly exclude Aspiranet from their claims for "public employee liability" (Claim 1) and "violation of mandatory statutory duties" (Claim 2). Accordingly, Aspiranet has no reason to "engage in extensive, expensive and burdensome discovery and motion practice relating to 'public entity liability,' mandatory duties and other statutory and regulatory duties that have nothing whatsoever to do with Aspiranet[.]" See Aspiranet Reply at 13.

Nevertheless, to the extent that—through plaintiffs' use of the collective noun "defendants"—plaintiffs' claims against Aspiranet rely on the allegation that Aspiranet is a "public entity" within the meaning of Section 811.2 or that Aspiranet is subject to "mandatory duties" pursuant to Section 815.6, the Court **DISMISSES** such claims without prejudice.

### 4.    Whether the FAC Complies with Rule 8

Aspiranet argues that the FAC should be dismissed in its entirety for failure to comply with Federal Rule of Civil Procedure 8. MTD at 24–25. "In the exercise of their discretion and in order to promote judicial economy, courts often will use a motion directed at the form of a pleading (or a motion to dismiss under Rule 12(b)(6)) as a vehicle for considering whether any possible claim for relief [under Rule 8(a)] exists." Charles A. Wright & Arthur R. Miller, 5 Federal Practice & Procedure § 1217 (3d ed.). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quotation marks omitted). Upon reviewing plaintiffs' complaint, and keeping in mind the liberal pleading standards embodied in Rule 8, the Court finds that the FAC gives Aspiranet fair notice of plaintiffs' claims. Accordingly, Aspiranet's motion to dismiss the FAC for failure to comply with Rule 8 is **DENIED**.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

### C.    The County Defendants' Motion to Dismiss

#### 1.    Individual County Defendants

The County defendants request that the Court dismiss plaintiffs' claims against Paik, Marshall, and Mirza because plaintiffs do not allege any specific wrongdoing by these individuals.  County MTD at 6–7.

With respect to Paik, plaintiffs allege that he: (a) was employed as a Supervising Adoptions Children's Social Worker, FAC ¶ 16; (b) was an agent of the County, id. ¶ 21; and (c) acted within the scope of his public employment as a social worker and mandated reporter, id. ¶ 117.  Plaintiffs do not allege that Paik knew of the conditions of plaintiffs' foster placement or Brewer's treatment.  Because plaintiffs fail to allege any wrongful conduct by Paik, the Court **GRANTS** the County Defendants' motion with respect to Paik and **DISMISSES** plaintiffs' claims against Paik without prejudice.

With respect to Marshall, plaintiffs allege that she: (a) was employed as an Adoptions Children's Social Worker, id. ¶ 15; (b) was an agent of the County, id. ¶ 21; (c) reported to the juvenile court "that plaintiffs continued in the Aspiranet / Brewer certified foster home as plaintiffs' prospective adoptive mother," id. ¶ 92;[4] and (d) acted within the scope of her public employment as a social worker and mandated reporter, id. ¶ 117.  Plaintiffs do not allege that Marshall knew of the conditions of plaintiffs' foster placement or Brewer's treatment.  Because plaintiffs fail to allege any wrongful conduct by Marshall, the Court **GRANTS** the County defendants' motion with respect to Marshall and **DISMISSES** plaintiffs' claims against Marshall without prejudice.

Plaintiffs allege that Mirza: (a) was employed as a Children's Social Worker, id. ¶ 14; (b) was a child protection worker and public employee authorized to initiate or conduct investigations or proceedings of suspected child abuse, id. ¶ 116; (c) was an agent of the County, id. ¶ 21; (d) reported that, in school, D.B. was unable to focus, regularly put things in his mouth (including paste, cotton balls, and scissors), and could not work independently, id. ¶ 91;  (e) visited Brewer with another social worker, during which time S.B. appeared sad and anxious, was preoccupied with idea of "prison and

---

[4] The Court is unsure what plaintiffs mean by this allegation.  To the extent plaintiffs intend to allege that Marshall recommended to the juvenile court that Brewer serve as plaintiffs' adoptive parent, plaintiffs should clarify as much in an amended complaint.

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|--------------------------|------|----------------|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

staying in her room as if it were a prison, and told the social workers that she wanted to live elsewhere, id. ¶ 99; (f) acted within the scope of her public employment as a social worker and mandated reporter, id. ¶ 117; (g) delivered service logs for the period of August 2007 through January 18, 2013 and "negligently, carelessly, recklessly and wrongfully fail[ed] to include full and complete entries of the facts," id. ¶ 118; and (h) had access to plaintiffs' prior juvenile court history, which made the risks of harm to plaintiffs "knowable and foreseeable" while they were in Brewer's care, id. ¶ 120. As a result, plaintiffs allege that Mirza "negligently, carelessly, recklessly, willfully, and maliciously" failed to investigate and ignored the referrals against Brewer; concluded improperly that the referrals were "unfounded"; failed to obtain independent statements from Brewer's victims, including plaintiffs; failed to assess plaintiffs' juvenile court history; failed to assess plaintiffs' physical and emotional condition; and failed to take necessary action to safeguard plaintiffs' growth and development. Id. ¶ 120. Reading the FAC in the light most favorable to plaintiffs, the Court finds that plaintiffs allege specific facts against Mirza that, when taken as true, indicate that Mirza knew or should have known of the conditions of plaintiffs' foster placement and may be liable for plaintiffs' injuries. Accordingly, the Court **DENIES** the County defendants' motion with respect to Mirza.

### 2.    Absolute Immunity

The County defendants argue that California Government Code § 821.6 provides absolute immunity from any claims predicated on allegations that the County wrongfully concluded that plaintiffs should not be removed from Brewer's care and custody. See County MTD at 7–9.

California Government Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "[T]he California Supreme Court has narrowly interpreted section 821.6." Dees v. Cty. of San Diego, No. 3:14-cv-0189-BEN-DHB, 2017 WL 168569, at *2 (S.D. Cal. Jan. 17, 2017). In Sullivan v. Cty. of Los Angeles, 527 P.2d 865 (Cal. 1974, the California Supreme Court stated that "the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for Malicious prosecution" and "confin[ed] its reach to malicious prosecution actions." Id. at 871. The Ninth Circuit recently considered the scope of section 821.6. Garmon v. Cty. of Los Angeles, 828 F.3d 837, 847 (9th Cir. 2016). The Garmon court

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. |

acknowledged that California Courts of Appeal have interpreted Section 821.6 more expansively since Sullivan, applying its reach to claims other than malicious prosecution. Id. Nevertheless, the Ninth Circuit noted that, "[w]hen interpreting state law, a federal court is bound by the decision of the highest state court." Id. (quotation marks omitted). Thus, the Garmon court determined that "the California Supreme Court would adhere to Sullivan even though California Courts of Appeal have strayed from it." Id. As a result, the Ninth Circuit held that the district court erred when it dismissed state law claims that were not malicious prosecution claims based on immunity under section 821.6. Id. Adhering to Sullivan and Garmon, the Court concludes that the County defendants may not rely on Section 821.6 as a basis for immunity from plaintiffs' claims because plaintiff does not assert a malicious prosecution claim.

Though the County defendants purport to rely on Section 821.6, in practice they appear to argue that they are entitled to common law prosecutorial immunity.[5] For example, the County defendants rely on Meyers v. Contra Costa County Department of Social Services, 812 F.2d 1154 (9th Cir. 1987) for the premise that the Ninth Circuit has "extended absolute immunity to social workers for improperly weighing and presenting evidence." County MTD at 8. In Meyers, the Ninth Circuit stated that "[s]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." 812 F.2d at 1157. However, the Ninth Circuit has since clarified that "Meyers recognized absolute immunity for social workers *only for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents*." Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003) (emphasis added). Particularly relevant here, the Miller court further explained:

> To the extent, however, that social workers also make discretionary
> decisions and recommendations that are not functionally similar to

---

[5] This kind of immunity is specific to Section 1983 claims. The Supreme Court has recognized that when Congress enacted Section 1983, it was aware of a well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process. See Forrester v. White, 484 U.S. 219, 225–26 (1988); Imbler v. Pachtman, 424 U.S. 409, 418–24, 430 (1976). Thus, it was presumed that if Congress had wished to abrogate common-law immunity, it would have done so expressly. Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993); Pierson v. Ray, 386 U.S. 547, 554–55 (1967).

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

prosecutorial or judicial decisions, only qualified, not absolute immunity, is available. *Examples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care.*

Id. (emphasis added). In the instant case, plaintiffs do not challenge the County's decision to institute dependency proceedings and take custody away from plaintiffs' biological parents. Rather, plaintiffs allege that they should not have been placed in Brewer's home, they should not have been allowed to remain in foster placement there, and Brewer should not have been approved as plaintiffs' adoptive parent. Accordingly, pursuant to Meyers and Miller, the Court concludes that defendants are not entitled to absolute common law prosecutorial immunity.

### 3. Qualified Immunity under California Government Code § 820.2

The County defendants argue that their conduct is also protected by qualified immunity conferred by California Government Code § 820.2, and extended to the County pursuant to California Government Code § 815.2.

Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Section 815.2(b) provides that "a public entity is not liable for an injury resulting from an act or omission of employee of the public entity where the employee is immune from liability." "Two principles California courts consider to determine whether discretionary act immunity applies are particularly relevant here." AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 639 (9th Cir. 2012). First, "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." Barner v. Leeds, 13 P.3d 704, 709 (Cal. 2000). "To determine which acts are discretionary, California courts do not look at the literal meaning of 'discretionary,' because '[a]lmost all acts involve some choice between alternatives." Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Caldwell v. Montoya, 897 P.2d 1320, 1325 (Cal. 1995)). "Rather, immunity protects 'basic policy decisions,' but does not protect 'operational' or 'ministerial' decisions that merely implement a basic policy decision." Id. Second, "to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." Johnson v. State, 447 P.2d 352, 361 (Cal. 1968).

Courts have held that the determination to place a child in a particular foster home and inadequate or negligent investigations by social workers are discretionary activities immune from liability pursuant to Section 820.2. See Clarke v. Upton, No. 1:07-cv-888-OWW-SMS, 2008 WL 2025079, at *17 (E.D. Cal. May 9, 2008) ("The immunity set forth in Section 820.2 applies to claims of negligent and intentional conduct alleged in connection with a child abuse investigation as well as to decisions concerning the ultimate placement of a dependent child." (citations omitted)); Guzman v. County of Alameda, No. 10-cv-2250-MEJ, 2010 WL 3702652, at *8 (N.D. Cal. Sept. 10, 2010) ("[C]ourts have recognized immunity for social workers in their investigations of child abuse complaints."); Becerra v. County of Santa Cruz, 68 Cal. App. 4th 1450, 1462 (1989) ("[T]he determination to place a child in a particular foster home is also immune from liability pursuant to Government Code section 820.2."); Alicia T. v. County of Los Angeles, 222 Cal. App. 3d 869, 882 (1990) (rejecting plaintiffs' argument that "the investigative nature of a social worker's employment is ministerial and not discretionary"). In Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000), the Ninth Circuit summarized the rules set forth in Alicia T and Newton v. Cty. of Napa, 217 Cal. App. 3d 1551 (1990):

> [Section] 820.2 applies to county social workers engaged in investigating allegations of child abuse, and extends to other public employees whom those social workers reasonably enlist to assist in the investigation. This immunity provides complete protection for the decision to investigate, to make an 'in-person response,' and for actions necessary to make a meaningful investigation. It does not extend, however, to non-discretionary actions or to at least some intentional torts committed in the course of making the investigation, such as battery and false imprisonment.

Wallace 202 F.3d at 1144–45 (citation and quotation marks omitted)).

More recently, however, in AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, the Ninth Circuit concluded that a county "was *not* entitled to dismissal of AE's derivative liability claims on the basis of discretionary act immunity for the allegedly negligent placement and supervision of AE by [county social workers]." Id. at 640 (emphasis added). The AE court reached this decision based on the "California Supreme

| | | | | |
|---|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | | **'O'** |
| Case No. | 2:17-cv-01651-CAS(RAOx) | | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | | |

Court's admonishment that an employee's normal job duties are not determinative; the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and benefits." Id. (citing Johnson, 447 P.2d at 361). Following AE, district courts have concluded that "the Ninth Circuit has indicated that it may be inappropriate for courts to find discretionary act immunity applies at the pleadings stage." Uriarte v. Bostic, No. 15-cv-1606-MMA-PCL, 2017 WL 2312084, at *9 (S.D. Cal. May 26, 2017); Martinez v. Cty. of Sonoma, No. 15-cv-01953-JST, 2015 WL 5354071, at *10 (N.D. Cal. Sept. 14, 2015) ("[S]uch a claim of immunity can generally not be resolved at a motion to dismiss. Defendants have not yet shown they are entitled to discretionary immunity under Section 820 and their motion to dismiss on this basis is denied." (citation omitted)); Mitchell v. Cate, No. 2:08-cv-01196, 2014 WL 546338, at *31 (E.D. Cal. Feb. 11, 2014) ("This Court stands by its original determination that whether Felker, Wright and Foulk made 'deliberate and considered policy decisions' with respect to the alleged lockdowns are questions of fact. Defendants' blanket assertions that Felker's decisions were discretionary within California Government Code § 820.2 because they involved personal deliberation does not demonstrate that the actions conform with the legal meaning of discretion as defined by the California Supreme Court."). Consistent with AE and Johnson, the Court finds that the County defendants have not met their burden to demonstrate that their specific policy decisions were made after consciously balancing the risks and benefits. "Here, [the County defendants] do[] not present any evidence or argument regarding the context or nature of [their] decisions to" engage in the allegedly tortious conduct. See Uriarte, 2017 WL 2312084, at *10. While the County defendants may ultimately be entitled to discretionary act immunity pursuant to Section 820.2, the Court declines to find such immunity on the pleadings because "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants." AE, 666 F.3d at 640.

### 4. Immunity from General Negligence Claims under California Government Code § 815

The County defendants argue that, pursuant to California Government Code § 815, they are immune from liability for a "regular negligence claim" because state and local public entities, and their employees, may only be held liable for personal injury or tort if a statute expressly authorizes such liability. County MTD at 10. On that basis, the

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|---|---|---|---|
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

County defendants seek to dismiss Claim 1 for public employee liability and Claim 3 for breach of duty arising from a special relationship.[6]  County Reply at 6.

Section 815 provides: "Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  "Thus, under the Act, all governmental liability is statutory, except as required by the state or federal Constitutions." Gong v. City of Rosemead, 226 Cal. App. 4th 363, 370 (2014).  However, "[s]ubdivision (a) of Government Code section 815.2 sets forth an exception to this rule." M.P. v. City of Sacramento, 177 Cal. App. 4th 121, 128 (2009).  California Government Code § 815.2 provides: "A public entity *is* liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2 (emphasis added).  Such vicarious liability does not apply, however, where the public employee is immune from liability. Id. § 815.2(b).  Public employees may be held individually liable as well: "Except as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person." Id. § 820(a).

Applying this statutory scheme to the instant case, Section 815 does not provide immunity from claims of negligence against the County because there *is* a specific statute that imposes vicarious liability on public entities for acts or omissions committed by public employees, namely California Government Code § 815.2.  Thus, the County may be vicariously liable for acts or omissions committed by Mirza, Marshall, Paik, or other County employees.  Furthermore, Section 815 does not provide Mirza, Marshall, and Paik immunity from negligence claims because public employees may themselves be held liable for their tortious conduct pursuant to Section 820.

The Court notes, however, that plaintiffs first claim for "public employee liability" is asserted as against the County *and* Mirza, Marshall, Paik, and McQueen pursuant to California Government Code § 820.  Section 820 addresses the liability of public *employees* only; plaintiffs may not assert a claim against the County pursuant to Section 820.  Therefore, the Court **DISMISSES** plaintiffs' first claim as against the County.

---

[6] The Court has already dismissed Claim 3 as against all defendants and need not address any additional basis for dismissing the claim. See supra Section IV.B.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
|----------|-------------------------|------|---------------|
| Title    | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

Nevertheless, Section 815 does not bar plaintiffs from asserting, in an amended complaint, a claim for vicarious lability against the County pursuant to Section 815.2.

### 3.      Adequacy of Claim 1 for Public Employee Liability

The County defendants argue that plaintiffs' first claim for public employee liability fails for the separate reason that there "is no claim for relief recognized as 'public employee lability.'"  County MTD at 11.  The County defendants contend that plaintiffs rely on California Government Code § 820.8.  See id.  However, plaintiffs do not refer to this provision in the FAC.  Reading the complaint in the light most favorable to plaintiffs, the Court finds that plaintiffs' first claim for "public employee liability" is a claim for negligence as against County employees, which plaintiffs may bring pursuant to Section 820.

### 4.      Section 1983

The County defendants argue that plaintiffs have failed to plead a Section 1983 claim for two reasons: (1) the Supreme Court's decision in DeShaney precludes a Section 1983 claim here; and (2) plaintiffs have not alleged the requisite facts to support a municipal liability under Monell.  County MTD at 14–18.

With respect to the County defendants' first argument, the Court has already concluded that plaintiffs assert a cognizable Section 1983 claim pursuant to the Fourteenth Amendment because this case is akin to Tamas, which the Ninth Circuit distinguished from the facts in DeShaney.  See supra Section IV.B.1.a.

However, the Court finds that plaintiffs do not adequately plead a Monell claim against the County.  A municipality and other local government unit cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691 (emphasis original).  Rather, a plaintiff may establish municipal liability by demonstrating that "a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity." Avalos, 596 F.3d at 587–88.  Liability based upon a formal policy ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." Brown, 520 U.S. at 403–04.  Similarly, an act performed

pursuant to "custom" which has not been "formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have force of law." Id. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

Ultimately, municipalities and counties may be held liable under 42 U.S.C. § 1983 only where a plaintiffs sufficiently allege that: (1) "they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount to deliberate indifference to their constitutional rights; and (3) that these policies are the 'moving force behind the constitutional violation[s].'" Lee v. City of Los Angeles, 250 F.3d 668, 681–82 (9th Cir. 2001) (quotation marks omitted).

With respect to plaintiffs' Monell claim against the County, plaintiffs allege:

At all times, the individual defendants . . . were acting within the scope of their employment and pursuant to the official policies, customs and practices of LACO and its DCFS. These unlawful policies and practices were enforced by LACO, and were the moving force, proximate cause, or affirmative link behind the conduct causing injury to plaintiffs.

. . .

At all times, LACO, who supervised the individuals who unlawfully violated plaintiffs' rights, developed, encouraged and tolerated the unlawful policies and practices described in the foregoing allegations. LACO acted knowingly and with deliberate indifference to the Constitutional rights of citizens, of plaintiffs in particular, and maintained and permitted an official policy, custom and practice of permitting the occurrence of the types of wrongs set forth. These policies, customs and practices include, but are not limited to, knowingly permitting its agents and employees to act with deliberate indifference in the implementation of and in the failure to implement the various alleged laws, enactments, statutes, and regulations for its minor dependents such as plaintiffs.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | |

FAC ¶ 146. Even reading the FAC in the light most favorable to plaintiffs, the Court finds that, plaintiffs do not adequately plead a <u>Monell</u> claim against the County. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." <u>Brown</u>, 520 U.S. at 404. While plaintiffs recite the elements of a <u>Monell</u> claim against the County, the Court finds that plaintiffs do not allege facts that, if true, would establish that the County had a policy or widespread custom that caused plaintiffs' injuries. <u>Twombly</u>, 550 U.S. at 545 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (citation and quotation marks omitted)). Accordingly, the Court **DISMISSES** without prejudice plaintiffs' Section 1983 claim as against the County.

## V. CONCLUSION

In accordance with the foregoing:

The Court **DENIES** Aspiranet's motion to strike portions of the FAC.

The Court **DISMISSES** without prejudice plaintiffs' Section 1983 claim against Aspiranet.

The Court **DISMISSES** without prejudice plaintiffs' third claim for breach of duty arising from a special relationship as against all defendants.

To the extent that—through plaintiffs' use of the collective noun "defendants"—plaintiffs' claims against Aspiranet rely on the allegation that Aspiranet is a "public entity" within the meaning of Section 811.2 or that Aspiranet is subject to "mandatory duties" pursuant to Section 815.6, the Court **DISMISSES** such claims without prejudice.

Aspiranet's motion to dismiss the FAC for failure to comply with Rule 8 is **DENIED**.

The Court **DISMISSES** without prejudice all of plaintiffs' claims against Paik and Marshall.

| CIVIL MINUTES – GENERAL | | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:17-cv-01651-CAS(RAOx) | | Date | June 26, 2017 |
| Title | D.B. AND S.B. v. INGRID BREWER ET AL. | | | |

The Court **DENIES** the County defendants' motion to dismiss all claims against Mirza.

The Court **DENIES** the County defendants' motion to dismiss to the extent the motion is predicated on various theories of immunity.

The Court **DISMISSES** without prejudice plaintiffs' first claim for "public entity liability" as against the County. However, the Court **DENIES** the County defendants' motion to dismiss plaintiffs' first claim as against Mirza.

The Court **DENIES** the County defendants' motion to dismiss the Section 1983 claim as against Mirza.

The Court **DISMISSES** without prejudice the Section 1983 claim as against the County.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |